**Selma SMITH, Plaintiff-Appellant,**

v.

**FIRST NATIONAL BANK OF ATLANTA, Defendant-Appellee.**

**No. 87-8506**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 26, 1988.

dence of routine record disposal procedures, or other pertinent evidence.

Kenneth A. Smith, LaGrange, Ga., for plaintiff-appellant.

Richard M. Kirby, Hansell & Post, Atlanta, Ga., for defendant-appellee.

Before RONEY, Chief Judge, KRAVITCH and JOHNSON, Circuit Judges.

PER CURIAM:

After a remand by this Court for the district court to consider under the proper standards a motion by defendants for leave to file an out-of-time response to plaintiff's request for admissions, defendant was permitted to file its response pursuant to Fed. R.Civ.P. 36(b). After the response was

filed, the district court entered summary judgment for defendant. Plaintiff appeals. We affirm.

Plaintiff Selma Smith sued the First National Bank of Atlanta alleging a violation of the Fair Credit Reporting Act and of her right of privacy, and for libel. The Bank had reported that Smith was delinquent in her Visa account when an ex-husband had signed her name to the application for the account and, in fact, she had no account with the Bank.

The defendant Bank failed to respond, within the 45 days required by Rule 36, to a lengthy request for admissions. That failure, by operation of law, admitted all matters alleged including liability for $50,000 in actual damages and 1.5 million dollars in punitive damages.

The district court, applying a local rule, permitted a response, reopened discovery, and entered summary judgment for the defendant Bank. On appeal, in an unpublished opinion, this Court held the district court had improperly applied the local rule inconsistently with Rule 36(b), which establishes a two-part test in considering the withdrawal of admissions: *first,* that the presentation of the merits will not be subserved by the withdrawal, and *second,* that the party obtaining the admissions would not be prejudiced in its presentation of the case by the withdrawal. *Smith v. First National Bank,* 797 F.2d 980 (11th Cir. 1986). The district court having reinstated the Bank's response to admissions and having reissued the summary judgment, the purpose of this review is to determine whether it complied with the prior mandate of this Court and properly applied Rule 36(b), and whether summary judgment was proper.

■ The district court, in granting defendant's motion to reopen discovery and to respond to the plaintiff's request for admissions, stated:

The court concludes that the presentation of the merits of this action will be subserved by permitting the defendant to respond to the request for admissions. It would be manifestly unfair and grossly unjust to permit the plaintiff to obtain a judgment of the magnitude she is seeking due to the inadvertence of the defendant which is at most excusable neglect. The ascertainment of the truth and the development of the merits would be enhanced by permitting the defendant to respond, especially in view of the absence of some particularized allegations of the prejudice caused by the delay. In the absence of such a showing, plaintiff cannot establish the requisite prejudice that would justify the denial of defendant's motion. Therefore, the court concludes that the defendant is entitled, under both parts of the Rule 36(b) test, to relief.

Discovery was reopened for 60 days. Smith was also awarded $18,275 in partial compensation for expenses incurred up until remand. The court provided that plaintiff could seek relief from the withdrawal of admissions if she discovered in the course of the proceedings "that the delay has in any way affected her ability to obtain appropriate discovery." This was done by a motion to reinstate the admissions. The district court carefully considered, but rejected, every allegation of specific prejudice.

Thus, the district court properly applied the two-part test in Fed.R.Civ.P. 36(b). The district court noted that the defendant's failure to timely respond to Smith's request for admission was inadvertent and "at most excusable neglect." There is nothing in the record that shows such finding was erroneous. *Cf. Reyes v. Vantage S.S. Co., Inc.,* 672 F.2d 556, 557–58 (5th Cir.1982) (district court's withdrawal of admission pursuant to Rule 36(b) affirmed where admission was based on "faulty assumption"); *Asea, Inc. v. Southern Pac. Transp. Co.,* 669 F.2d 1242, 1248 (9th Cir. 1981) ("In a proper case ... such as when an admission has been made inadvertently, Rule 36(b) might well require the district court to permit withdrawal.").

Rule 36(b) "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his

prejudice." Fed.R.Civ.P. 36 advisory committee's note. Smith has not satisfactorily shown on this appeal that the district court was wrong in deciding that withdrawal has prejudiced her in maintaining the action on the merits.

> The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, *e.g.,* caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions.

*Brook Village North Assoc. v. General Elec. Co.,* 686 F.2d 66, 70 (1st Cir.1982).

■■■ The district court properly granted the Bank's motion for summary judgment. First, where the Bank has reported information based solely on its own experience with one of its customers, the Bank is not acting as a "consumer reporting agency," within the meaning of the Fair Credit Reporting Act, because, *inter alia,* it has not furnished a "consumer report" as that term is defined in the Act. A "consumer report" does not include "any report containing information solely as to transactions or experiences between the consumer and the person making the report." 15 U.S.C.A. § 1681a(d), (f); *Rush v. Macy's New York, Inc.,* 775 F.2d 1554 (11th Cir. 1985). *Accord Freeman v. Southern Nat'l Bank,* 531 F.Supp. 94 (S.D.Tx.1982). Here, the Bank did no more than furnish information regarding an account in the name of Selma Woody to a credit reporting agency. Plaintiff argues that the Bank's information was not as to a transaction between it and a consumer, because Smith was not, in fact, a customer of the Bank. The record supports, however, the district court's finding that from the Bank's point of view, until it received an affidavit from Smith indicating there had been a forgery, which enabled it to take immediate action to correct the reports it sent, it believed Smith was its customer and responsible for the delinquent account. The district court properly applied the Act in deciding these facts did not make the Bank's information a consumer report.

The key to Smith's argument that the Bank has willfully intruded upon her seclusion or solitude or into her private affairs, so as to amount to an invasion of her right to privacy, is whether the Bank acted in bad faith in issuing the report. *See Peacock v. Retail Credit Co.,* 302 F.Supp. 418, 422–24 (N.D.Ga.1969), *aff'd,* 429 F.2d 31 (5th Cir.1970), *cert. denied,* 401 U.S. 938, 91 S.Ct. 927, 28 L.Ed.2d 217 (1971) (discussing applicability of tort of invasion of privacy where alleged false credit reports have been issued) and *Haggard v. Shaw,* 100 Ga.App. 813, 818, 112 S.E.2d 286, 291 (1959) (containing broad language to the effect that cause of action for invasion of privacy may be maintained where information sent is done for the purpose of doing injury to the plaintiff). There is nothing in this record to contradict the district court's finding that bad faith was not present in the case.

■■■ As to plaintiff's libel claim, the report issued was not libelous *per se.* Therefore, absent a showing of special damages, plaintiff cannot recover damages from the Bank. *See Hood v. Dun & Bradstreet, Inc.,* 486 F.2d 25, 27–28 (5th Cir.1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed. 2d 882 (1974). No showing of special damages was made. Smith admits that she has not been denied credit, and has in fact received credit since the reports were issued.

Apparently the Bank furnished erroneous information about plaintiff's indebtedness, after her contact with the bank, as a result of confusion because the VISA account was in the name of Selma Woody, whereas plaintiff was challenging the Bank's information under the name of Selma Smith. After receiving clear notification that the plaintiff had not signed the application, the Bank corrected its error.

AFFIRMED.

## APPENDIX

### MOTIONS FOR SUMMARY JUDGMENT

Both the plaintiff and defendant Bank have filed motions for summary judgment.

The plaintiff in her complaint has asserted claims based on alleged violations of the Act, 15 U.S.C. § 1681, of her right to privacy, and of O.C.G.A. § 51–5–1(a), Georgia's libel statute. The basis of the plaintiff's motion for summary judgment is defendant Bank's failure to timely file responses to her request for admissions. Because this court has granted defendant Bank's motion for leave to file its responses, the plaintiff's motion for summary judgment is without merit since defendant Bank is not deemed to have made the requested admissions. Accordingly, the court overrules and denies the plaintiff's motion for summary judgment.

## 1. Fair Credit Reporting Act Claim

Defendant Bank has moved for summary judgment under Rule 56, Fed.R.Civ.P., as to each of the plaintiff's claims, stating that there are no material facts in dispute. With respect to the plaintiff's first claim, defendant Bank contends that it is not a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f), which provides as follows:

> The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

Section 1681a(d) defines the term "consumer report" in part as follows:

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit.... The term does not include

> (A) any report containing information solely as to transactions or experiences between the consumer and the person making the report....

Under certain circumstances, a bank could be a consumer reporting agency. *See Freeman v. Southern National Bank*, 531 F.Supp. 94, 95 (S.D.Tex.1982). When a bank, however, furnishes information based solely on its own experience with a consumer, it is not a consumer reporting agency because of the exclusion specified in § 1681a(d). The Act narrowly defines consumer reporting agencies by stating that they "assemble or evaluate" consumer credit information. *See D'Angelo v. Wilmington Medical Center, Inc.*, 515 F.Supp. 1250, 1253 (D.Del.1981). This restriction in the definition "implies a function which involves more than receipt and retransmission of information identifying a particular debt." *Id.* The Act is not "directed to those who supply information on individual debts to ... consumer reporting agencies, nor to those who are remote from those decisionmakers who rely upon 'consumer reports' in making credit and other decisions." *Id.*

In the present case, the plaintiff contends that summary judgment is improper as to her claim under the Act because she never applied for credit with defendant Bank and because she never transacted any business with defendant Bank. She asserts that defendant Bank may not deny liability by claiming the exclusion of § 1681a(d) as to transactions and experiences between the consumer and the person making the report. While it is clear that the plaintiff was not a customer of defendant Bank, the alleged deception of her ex-husband caused her to appear as a customer to defendant Bank. Furthermore, the reporting of Selma Woody's debt on the joint account is similar to the transmission of "information identifying a particular debt." *Id.* Under these circumstances the court finds that defendant Bank is not a consumer reporting agency within the meaning of § 1681a(f). The court therefore sustains and grants defendant Bank's motion for summary judgment as to the

plaintiff's claim under the Fair Credit Reporting Act.

### 2. Right of Privacy Claim

With respect to the plaintiff's claim that defendant Bank violated her right of privacy, defendant Bank maintains that summary judgment is proper because the plaintiff has not stated a cause of action against it. The plaintiff argues that defendant Bank has willfully intruded upon her seclusion or solitude, or into her private affairs.

Georgia case law recognizes that the right of privacy protects a person from intrusion upon his seclusion or solitude, or into his private affairs. *See Hines v. Columbus Bank & Trust Co.*, 137 Ga.App. 268, 269, 223 S.E.2d 468 (1976). When a plaintiff alleges intrusion in this manner, he must also state that the intrusion was "physical, analogous to a trespass." *See Peacock v. Retail Credit Co.*, 302 F.Supp. 418, 422 (N.D.Ga.1969), *aff'd*, 429 F.2d 31 (5th Cir.1970), *cert. denied*, 401 U.S. 938, 91 S.Ct. 927, 28 L.Ed.2d 217 (1971). Georgia law indicates, however, that a physical intrusion may not be necessary if the alleged intruder acted in bad faith. *See Haggard v. Shaw*, 100 Ga.App. 813, 818, 112 S.E.2d 286 (1959) (letter written to plaintiff's employer seeking aid in recovering a debt is actionable as an invasion of privacy if the letter was written "deliberately and in bad faith for the purpose of doing personal injury to the plaintiff").

In the present case, the plaintiff has not provided any evidence indicating that there was a physical intrusion in the nature of a trespass, nor has the plaintiff produced any affidavits that suggest that defendant Bank acted in bad faith. Although this court recognizes that summary judgment is difficult when an issue involves an individual's state of mind, summary judgment is nonetheless proper if the party opposing summary judgment fails to indicate "that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975). Under the circumstances of this case, the court sustains and grants defendant Bank's motion for summary judgment as to the plaintiff's right of privacy claim.

### 3. Libel Claim

Defendant Bank moves for summary judgment as to the plaintiff's libel claim, contending that the report distributed concerning Selma Woody's delinquent VISA credit card does not constitute libel *per se* and that the plaintiff has suffered no special damages. Although the plaintiff has admitted that she has not suffered any special damages, she maintains that defendant Bank has committed libel *per se.*

O.C.G.A. § 51–5–1(a) defines libel, which is written defamation as follows: "A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." The definition of slander in Georgia has been incorporated into the definition of libel. *See Hayes v. Irwin*, 541 F.Supp. 397, 431 n. 34 (N.D.Ga. 1982), *aff'd*, 729 F.2d 1466 (11th Cir.1984). O.C.G.A. § 51–5–4(a) defines slander, which is oral defamation as follows:

(1) Imputing to another a crime punishable by law;

(2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society;

(3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or

(4) Uttering any disparaging words productive of special damage which flows naturally therefrom.

In the first three categories damages are inferred; in the last category, special damages are necessary to support an action. *See Hood v. Dun & Bradstreet, Inc.*, 486 F.2d 25, 28 n. 3 (5th Cir.1973), *cert. denied*, 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974); O.C.G.A. § 51–5–4(b).

In *Hood*, 486 F.2d at 27–28, the Fifth Circuit Court of Appeals considered a credit report prepared by a defendant, who was a credit reporting agency. The report inaccurately stated that the plaintiff was being sued for a debt and that the plaintiff's

working capital was limited. The Court of Appeals agreed with the district court that the report was not libelous *per se* because the statements, although false, did not "impute to another conduct, characteristics or a condition incompatible with proper exercise of lawful business or trade." *Id.* at 28.

In the present case, the plaintiff argues that defendant Bank committed libel *per se* as defined by the Georgia Supreme Court in *Conway v. Signal Oil & Gas Co.*, 229 Ga. 849, 851, 194 S.E.2d 909 (1972). In *Conway*, 229 Ga. 850–51, 194 S.E.2d 909, the defendant had issued the plaintiff's husband a credit card. Even though the plaintiff had never used the card, the defendant had attempted to collect the debt by calling the plaintiff's employer. The Georgia Supreme Court held that because under Georgia law a wife is not liable for any credit extended unless she has accepted goods with the knowledge that she may be held liable, the defendant could not "reasonably infer that the plaintiff had assumed the account...." *Id.* at 851, 194 S.E.2d 909. The Court thus held that the letter to the employer was libelous *per se.*

Under the circumstances of the present case, it appears that defendant Bank could reasonably infer that Selma Woody was liable for defendant Woody's debts since the application for a joint account was allegedly signed by her. The particular facts of this case are not similar to cases where malice can be inferred from the nature of the defamation. *See generally Rosanova v. Playboy Enterprises, Inc.*, 411 F.Supp. 440, 445 (S.D.Ga.1976), *aff'd*, 580 F.2d 859 (5th Cir.1978). After receiving clear notification that the plaintiff had not signed the application, defendant Bank corrected its error. As a result of the error, the plaintiff was not denied credit anywhere. Because the plaintiff has admitted that she has incurred no special damages and because the court finds that the inaccurate report does not constitute libel *per se,* the court sustains and grants defendant Bank's motion for summary judgment as to the plaintiff's libel claim.

In summary, the court overrules and denies the plaintiff's motion to strike defendant Bank's answer and for entry of a default judgment, overrules and denies defendant Bank's motion for attorney's fees, overrules and denies the plaintiff's motion for summary judgment, sustains and grants defendant Bank's motion for leave to file responses to the plaintiff's requests for admissions, and sustains and grants defendant Bank's motion for summary judgment. The Clerk of Court is directed to enter judgment in favor of defendant Bank.

SO ORDERED, this 19 day of August, 1985.

/s/ G. ERNEST TIDWELL
JUDGE, UNITED STATES
DISTRICT COURT