**ADM AGRI–INDUSTRIES,
LTD., Plaintiff,**

v.

**Bobby H. HARVEY, Defendant.**

No. Civ.A. 00–T–259–N.

United States District Court,
M.D. Alabama,
Northern Division.

May 9, 2001.

James A. Byram, Jr., J. Beth Moscarelli, Balch & Bingham, Montgomery, AL, for plaintiff.

Joseph C. Espy, III, Melton, Espy, Williams & Hayes, P.C., Montgomery, AL, Kenneth O. Simon, Simon & Associates, Birmingham, AL, for defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

In this lawsuit, plaintiff ADM Agri–Industries, Ltd. sues defendant Bobby H. Harvey to recover for Harvey's alleged breach of contract and fraudulent representation, while Harvey counterclaims for fraudulent inducement and breach of warranty and of contractual duty. The court has jurisdiction over the case on the basis of diversity of citizenship, 28 U.S.C.A. § 1332. The court has two motions before it: (1) Harvey's motion to limit, withdraw, or amend his admissions, and (2) ADM's motion to strike an affidavit submitted by Harvey in opposition to ADM's motion for summary judgment. For the reasons that follow, the court will deny both motions.

## I. FACTUAL BACKGROUND

Both motions are in response to the effects of an order of the Magistrate Judge deeming certain requested admissions that were posed to Harvey to be facts admitted by Harvey. Through his motion, Harvey seeks to insulate his defenses and counterclaim from the damaging effect of these constructive admissions; ADM, through its motion, aims to enforce the admissions as binding and preclusive of inconsistent statements. The Magistrate Judge deemed the statements admitted because Harvey repeatedly failed to comply with ADM's discovery requests and the court's discovery deadlines. The pertinent history surrounding the discovery noncompliance includes the following.

*The year 2000:* On October 31, ADM first filed a motion for facts to be deemed admitted and to compel discovery. ADM averred that Harvey still had not provided initial disclosures which were due by June 8, and had not met the September 13 due date for combined discovery requests. ADM represented that it had made a good-faith effort to resolve the matter with Harvey, and that ADM first agreed with Harvey on a one-time only extension to October 13, but was subsequently asked by Harvey's counsel for a further extension to October 27 to allow counsel to meet with relevant people in Canada. On October 26, however, ADM received a phone message explaining that Harvey was in the process of retaining new counsel.

On November 9, Harvey moved for an extension of time to respond to discovery, specifically requesting a 20–day extension to respond to the combined discovery requests, and opposing ADM's motion to deem facts admitted; Harvey argued that he had new counsel not responsible for the overdue discovery. On November 16, the Magistrate Judge denied ADM's October 31 motion to deem facts admitted and to compel discovery, and granted Harvey's November 9 motion to extend the time to respond to discovery. The Magistrate Judge set a November 20 due date for the overdue discovery and stated that "No further extensions will be allowed."

*The year 2001:* On January 2, ADM filed a second motion to deem facts admitted; ADM argued that it still had not received any reply to the outstanding discovery, and that repeated good-faith efforts by ADM to resolve the matter privately had failed. At the same time, ADM filed a motion for summary judgment on its complaint, relying in part on ADM's unanswered request for admissions. On January 5, the Magistrate Judge set ADM's second motion to deem facts admitted for oral argument on January 12. According to the Magistrate Judge, "Immediately prior to the January 12 ... oral argument, the court received a copy of the defendant's response to the plaintiff's request for admissions." While it is not entirely clear from the record, this statement suggests that Harvey may have finally produced some outstanding discovery, thus belatedly responding to the Magistrate Judge's order of last November. However, after hearing the parties' oral arguments, the Magistrate Judge determined that Harvey had not provided sufficient justification for his failure to com-

ply timely with the November 20 deadline, and the Magistrate Judge, in a January 16 order, granted ADM's motion to deem facts admitted.

On January 29, Harvey filed his answer to ADM's complaint. He also filed a counterclaim as well as an affidavit and brief in opposition to ADM's summary-judgment motion. Harvey's answer and affidavit include statements that are plainly inconsistent with the facts deemed admitted by the Magistrate Judge. For example, in his answer, Harvey denies that Riverside Grain Products, Inc., a subsidiary of the company of which he is the majority shareholder, was in default of its obligations under the Asset Purchase Agreement on May 22, 1998, whereas one of the statements deemed admitted says that Riverside was in default of its obligations under the Asset Purchase Agreement on that date. ADM responded to these inconsistencies by submitting a motion to strike Harvey's affidavit "on the ground that the affidavit makes assertions directly contrary to the facts deemed admitted by Harvey's failure to respond to ADM's requests for admissions." Additionally, according to ADM, Harvey has never responded to ADM's repeated requests for initial disclosure that were due last June 8.

On February 20, ADM moved for summary judgment on Harvey's counterclaim, arguing that the counterclaim is barred by Harvey's constructive admissions. Harvey then submitted his motion to limit, withdraw, or amend, contending that the admissions should be effective only for purposes of establishing ADM's prima-facie case, and that they should be deemed inapplicable to Harvey's affirmative defenses.

The parties subsequently disagreed on whether Harvey had ultimately satisfied the outstanding discovery requests. On March 8, in his opposition to ADM's summary-judgment motion on his counterclaim, Harvey maintained that he was now in full compliance with ADM's discovery requests, that ADM had not been prejudiced by the delay, and that anyway ADM's requests had been "mostly boilerplate requests ... not directed to the allegations of the complaint, answer or counterclaim."[1] On that same date, however, ADM made directly contrary claims, and represented that Harvey still had not produced the initial disclosures due eight months earlier, on June 8, and that Harvey still had not responded to the interrogatories and requests for production served six months earlier, on August 11. Playing tit-for-tat, ADM then informed Harvey that it would refuse to comply with one of Harvey's discovery requests (production of Craig Hamlin for a deposition) because of Harvey's continuing noncompliance with discovery requests. Harvey filed a motion to compel Hamlin's deposition, and ADM rejoined with a motion to compel Harvey's outstanding discovery and with the filing of an objection to Harvey's request for the Hamlin deposition. The Magistrate Judge granted both parties' motions. The record does not reflect whether the parties then complied with the order or whether there still remains any overdue discovery.

At the pretrial conference held April 2, the court specifically asked Harvey's counsel to justify Harvey's discovery failures. The sin-

---

1. While this court's understanding of the parties' discovery dispute is, of course, limited to the evidence in the record, it is difficult for the court to credit Harvey's claim that the missing discovery was merely irrelevant "boilerplate." For example, Harvey's reply to ADM's requests for admissions refuses to answer all questions relating to the matters deemed admitted on the grounds that those questions have been rendered moot. By declining to answer any of these liability-related questions, Harvey's reply refused even to put ADM on notice as to whether Harvey would (if the court granted his motion to limit, withdraw, or amend) defend the case by contesting ADM's claim that Harvey's companies had been in default of the literal terms of its contracts with ADM, or if Harvey would instead concede default and rely exclusively on his affirmative defenses and counterclaim. Harvey's reply also refuses to answer questions relating to his assets despite the fact that ADM's fraudulent-misrepresentation claim is based on an accusation that Harvey misled the company about his assets. Even Harvey's failure to provide complete address information is hard to view as mere "boilerplate" given that, at the time, Harvey was contesting venue on the basis of his residence. Under Federal Rule of Civil Procedure 37, "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."

gle excuse offered was the change in counsel that occurred five months earlier, in November.[2] Nowhere in the record does Harvey offer any justification for his violation of the discovery schedule other than the replacement of one attorney by another. Yet, the periods of discovery noncompliance, even when construed in the light most favorable to Harvey, overlap with a significant period of time when Harvey was represented by the previous attorney and with a significant period of time after Harvey's new counsel came on board. Based on only the uncontested representations of ADM, the time periods when Harvey was noncompliant with the discovery schedule and court orders without permission from either ADM or the Magistrate Judge include at least June 8 to September 15, 2000, October 27, to November 16, 2000, and November 20, 2000, through January 12, 2001. Thus, there is no apparent correlation between the discovery problems and a particular attorney or any transition period between attorneys.

## II. DISCUSSION

### A. *Harvey's Motion*

■ Federal Rules of Civil Procedure 36 and 37 provide authority for the Magistrate Judge's order granting ADM's motion to deem admitted certain statements. While Rule 37 authorizes a wide range of sanctions for a party's failure to make disclosures or cooperate in discovery, Rule 36 provides an automatic mechanism for deeming unanswered or belatedly-answered interrogatory requests, such as ADM's, to be admissions:

> "The matter [of which an admission is requested] is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney."

Fed.R.Civ.P. 36(a). Because, without permission of the court or of ADM, Harvey failed to respond to ADM's requests within 30 days, ADM's unanswered requests could have been automatically counted as admissions under Rule 36(a). However, because ADM's requested admissions included alternative statements both accepting and denying matters such as contractual default, the result of deeming all of ADM's requests to be admitted would have been ambiguity on key issues.

But, under Federal Rules of Civil Procedure 33 and 37, it was entirely appropriate for ADM to move for, and the Magistrate Judge to grant, the selective deeming of only some of ADM's requests as admitted. *See* Fed.R.Civ.P. 33(b)(5) ("The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory."); Fed.R.Civ.P. 37(a)(2)(B) ("If . . . a party fails to answer an interrogatory submitted under Rule 33 . . ., the discovering party may move for an order compelling an answer, or a designation . . . ."); Fed. R.Civ.P. 37(d) ("If a party . . . fails . . . to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule [providing that the court may make an order establishing certain facts, refusing to allow the disobedient party to support or oppose designated claims or defenses or to introduce designated matters in evidence, or striking out pleadings or part thereof.]").

Absent a court order permitting withdrawal or amendment of Harvey's constructive admissions, they are "conclusively established." Fed.R.Civ.P. 36(b). Thus, unless Harvey's admissions are withdrawn or amended, his defenses and counterclaim can proceed, if at all, only in a manner consistent with the admissions. The determination whether this court should allow Harvey's ad-

---

**2.** Harvey's new counsel entered a notice of appearance on November 9, 2000, and this court granted the former attorney's November 1 motion to withdraw on November 16, 2000.

missions to be withdrawn or amended is governed by a two-part test: The court "may permit withdrawal or amendment when [ (1) ] the presentation of the merits of the action will be subserved thereby and [ (2) ] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Fed.R.Civ.P. 36(b); *see also Smith v. First National Bank of Atlanta,* 837 F.2d 1575, 1576 (11th Cir. 1988).

Both the caselaw and the Advisory Committee Note to Rule 36 suggest that courts should be reluctant to deny motions to withdraw or amend when final disposition of the case may result from mere discovery noncompliance rather than the merits. *See, e.g., First National,* 837 F.2d at 1577 ("It would be manifestly unfair and grossly unjust to permit the plaintiff to obtain a judgment of the magnitude she is seeking due to the inadvertence of the defendant which is at most excusable neglect."); *id.* ("In a proper case ... such as when an admission has been made inadvertently, Rule 36(b) might well require the district court to permit withdrawal.") (citations omitted); Fed.R.Civ.P. 36 advisory committee's note ("This provision [for withdrawal or amendment of an admission] emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice."); *but see Donovan v. Carls Drug Co.,* 703 F.2d 650, 651–652 (2d Cir.1983) ("Because the language of the Rule is permissive, the court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule. Vesting such power in the district court is essential for Rule 36 admissions effectively to narrow issues and speed the resolution of claims.").

█ Harvey's case for allowing withdrawal or amendment of the admissions is strongest under the first part of the test, that "the presentation of the merits of the action will be subserved thereby," Fed.R.Civ.P. 36(b), because, in his briefs, Harvey offers defenses that, on their face, appear potentially very substantive and that would be adversely impacted by the constructive admissions. The court is reluctant to allow the admissions to remain in the case if there is any possibility that Harvey could and would marshal evidence that, in the absence of the admissions, would be sufficient for his defenses and counterclaim to survive summary judgment, yet insufficient if his case were governed by the admissions. Counter-balancing this concern, however, is the problem that litigation on the merits is itself impaired by Harvey's pattern of uncooperativeness with the discovery schedule and court orders, and the fact that the court has no way of knowing whether Harvey's lack of cooperation is motivated by a simple desire to delay the prosecution of ADM's case on the merits.

However, the court need not make this difficult determination under part one of the Rule 36(b) test because the court has no trouble in concluding that Harvey's motion fails the second part of the test, that "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." The court is persuaded by ADM's argument that it would be unduly prejudiced if the court were to grant Harvey's motion to limit, withdraw, or amend the admissions. This prejudice is not, of course, the simple fact that ADM's case is worse off without the admissions. "The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, *e.g.,* caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions." *First National Bank,* 837 F.2d at 1578 (citations omitted). Thus, ADM's burden is to show it will unfairly face proof problems related to the process of having and then losing the admissions. This burden has been met by ADM.

Harvey's conduct so far has caused uncertainty and delay for ADM. For example, it has prevented ADM from knowing for sure whether its prima-facie case would be con-

tested and knowing to what extent it would be prudent to invest resources in the hiring of Canadian lawyers. However, it is the present and prospective problems that ADM will face in maintaining its action on the merits that concern the court and that implicate the second part of the Rule 36(b) test. If Harvey had been able to provide any plausible explanation for his past discovery noncompliance and any reason to think that his uncooperativeness has now come to an end, the court might be more inclined to find that ADM has not carried its burden to show prejudice from the withdrawal or amendment of the admissions. But, because Harvey has never given the court a viable explanation for his past discovery noncompliance, and because Harvey has even evinced a willingness to ignore a direct order from the Magistrate Judge, the court must infer that Harvey's conduct will not be any different going forward in the case, or, at least, it will not be any different in the absence of an unambiguous signal from the court that discovery noncompliance may have damaging consequences for his defenses and counterclaim. The court concludes that ADM would be unduly prejudiced without the admissions because, without their deterrent value, it would face a heightened and unfair risk of having to prosecute the rest of the case without getting Harvey's compliance with further necessary discovery requests.[3]

The court reaches this result on the basis of its concern for the fairness and efficiency of the future course of this case, and does not intend its denial of Harvey's motion as any kind of punishment for his conduct. Nonetheless, the court notes that any adverse effect of the court's denial on the merits of Harvey's defense and counterclaim may also be equitably justified by the fact that Harvey has had repeated notice and opportunity to remedy his conduct. If Harvey had been

unable to comply with the discovery schedule or to get ADM's approval for further extensions, or, if, at one time, he had thought his motion to dismiss for lack of venue was so likely to succeed that discovery on the merits should not proceed,[4] the appropriate course of action would have been for Harvey to petition the court for an extension or a stay of discovery—not to unilaterally disregard established schedules and court orders. *See, e.g., Chudasama v. Mazda Motor Corp.* 123 F.3d 1353, 1367 (11th Cir.1997); Fed.R.Civ.P. 37(d) ("The failure ... [to serve answers to interrogatories] may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order ....").

### B. *ADM's Motion*

■ In order to enforce Harvey's constructive admissions as established facts of the case, ADM has moved to strike Harvey's affidavit in opposition to summary judgment. The court denies this motion because, although Harvey's answer includes statements that are unambiguously inconsistent with the admissions, the extent of the inconsistency between his affidavit and the admissions is entirely unclear from the record. It is evident that Harvey's admissions significantly constrain the manner in which he may defend the case and prosecute the counterclaim because the admissions concede that Harvey's companies defaulted on their obligations under the contracts executed with ADM and that ADM fulfilled its obligations under the contracts. However, there are a variety of ways in which the admissions about "obligations" might turn out not to destroy all of Harvey's defenses and counterclaim.[5] For example, Harvey argues that the term "obligations" in the admissions could refer to certain express terms of the contracts rather than broader default or

---

3. Indeed, the substantial risk of continued noncompliance by Harvey puts in doubt whether, without the admissions, ADM will be able to obtain full and adequate discovery on the substance of the admissions.

4. Harvey's motion to dismiss for lack of venue or to transfer venue was denied by consent of the parties on April 26, 2001.

5. One meritless argument made by Harvey is that the admissions should be construed as valid for purposes of ADM's prima-facie case, and, once ADM's prima-facie case is established, then inapplicable for the remainder of the suit. The court does not see any justification for limiting admissions to a particular stage of an action, and Rule 36(b) speaks in terms of the conclusiveness of an admission for a particular action, not a portion of an action.

mandatory contractual terms or other duties held under common law, such as a duty to refrain from fraudulent misrepresentation in the inducement of a contract. Alternatively, Harvey might argue that the term "obligation" in the admissions is tied to a definition internal to the contracts so that the "obligations" in the admissions refer narrowly to the parts of the contracts that themselves expressly use the word "obligation". Further, there may be aspects of the contracts that might be unenforceable under applicable law (for example, a boilerplate statement that all representations and warranties will be deemed to be true). In making these observations, the court is only speculating on the possible ways in which Harvey's defenses and counterclaim might exceed the constraints of the admissions, and is by no means aiming to construe the governing law. Neither of the parties has done their homework to brief the court on these issues in terms of the law that governs the contracts (that is, especially, the law of Ontario, Canada, which governs all but one contract). The court will require the parties to brief the court on the governing law, including the usage of the term "obligation" in Ontario's contract law, and the extent to which Harvey's defenses and counterclaim may survive the admissions under the applicable law.

## III. CONCLUSION

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that the motion to limit, withdraw, or amend admissions, filed by defendant Bobby H. Harvey on February 20, 2001, and the motion to strike, filed by plaintiff ADM Agri–Industries, Ltd. on February 5, 2001, are denied.

It is further ORDERED that, by no later than May 18, 2001, the parties are to submit briefs on the governing law and the extent to which Harvey's defenses an counterclaim may survive the admissions under the applicable law.

